IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PEGGY A. ROHREN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3150 |
| | ) | |
| v. | ) | |
| | ) | |
| CENTENNIAL PUBLIC SCHOOL | ) | MEMORANDUM AND ORDER ON |
| DISTRICT 67-R, and RICHARD ROLENC, | ) | DEFENDANTS' MOTIONS FOR |
| In His Individual And Official Capacity As | ) | SUMMARY JUDGMENT |
| Director Of Maintenance, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now before me are the defendants' "Motion for Summary Judgment Regarding Qualified Immunity of Defendant Richard Rolenc," filing 45, and "Motion for Summary Judgment Regarding Plaintiff's Claims," filing 48. For the following reasons, I find that the defendants' motions must be granted.

**I. BACKGROUND**

Defendant Centennial Public School District 67-R (Centennial) is a political subdivision of the State of Nebraska that "owns and operates Centennial Public School" (hereinafter "the school") in Utica, Nebraska. (Def.'s Br., Statement of Material Facts, filing 47 (Defs.' Facts) ¶ 2.) The plaintiff, Peggy Rohren, worked for Centennial as a "custodian/van driver from approximately December 1984 until her termination" in the summer of 2005. (Id. ¶ 4.) Defendant Richard Rolenc is a maintenance supervisor for Centennial, and at relevant times he served as the plaintiff's supervisor. (Id. ¶ 3.)

In 1997, Centennial hired Bill Mogee as a custodian. (Defs.' Facts ¶ 6.) Like the plaintiff, Mogee was responsible for cleaning a "regular area," presumably at the school. (Pl.'s Br., filing 57, at 2.) There is evidence that Mogee was not "as good" a custodian as the plaintiff. (Id.) However, Mogee also performed maintenance work, including "caring for the grounds,

1

snow removal with a Bobcat, appliance repair, and maintenance of the heating and cooling system." (Defs.' Facts ¶ 7)[1] There is evidence that the plaintiff scooped snow on occasion and might have helped with mowing on one or two occasions, (Pl.'s Br., filing 57, at 2-3 (citations omitted)), but there is no evidence that she performed the same repair and maintenance work that Mogee performed.[2]

In the fall of 2004, the plaintiff's "van driving hours were reduced . . . because a special education student who was serviced by the van route stopped attending" the school. (Defs.' Facts ¶ 13.) The plaintiff claims, however, that she spent the same amount of time driving as another driver, but that driver did not have her "paid hours" reduced. (Pl.'s Br., filing 57, at 5 ¶ 13.)

During her employment with Centennial, the plaintiff had been receiving "differential pay during the school year and summer for supervising the cleaning crew." (Defs.' Facts ¶ 14.) Rolenc claims that in late May 2005, the plaintiff informed him that she no longer wished to supervise the summer crew. (Id. ¶ 15.) Thereafter, Rolenc informed Centennial's bookkeeper that the plaintiff "should no longer receive differential pay for that summer, because she would no longer be performing duties" that made her eligible for the differential pay. (Id. ¶ 16.) The plaintiff claims that she did not tell Rolenc that she no longer wished to supervise the summer crew, and Rolenc has acknowledged that the plaintiff continued to assign work to the other custodians during the summer of 2005. (Pl.'s Br., filing 57, at 5 ¶ 15.) Nevertheless, it is undisputed that the plaintiff's pay was reduced on the ground that she was not serving as the

---

[1] Paragraph 7 of the defendants' statement of material facts cites erroneously to paragraph 4 of Richard Rolenc's affidavit; in fact, the facts cited in paragraph 7 are supported by paragraph 5 of that affidavit. The plaintiff argues that the facts stated in paragraph 7 are "controverted" because of this citation error. (See Pl.'s Br., filing 57, at 3 ¶ 7.) Although the defendants should take care to ensure that their citations are accurate, it seems to me that the duties performed by Mogee are not truly a matter of dispute.

[2] The plaintiff submits that Mogee's contract was "identical" to Rohren's. (Pl.'s Br., filing 57 at 1.) The contracts in evidence are substantially identical, but they are not indistinguishable. (Compare Pl.'s Index, filing 56, Ex. 14 (Custodian/Van Driver Contract) with id. Ex. 15 (Custodian/Bus Driver Contract).) I note too that the contracts do not include job descriptions for either Mogee's or the plaintiff's positions.

supervisor of the summer crew. (Defs.' Facts ¶ 17.) On July 14, 2005, the plaintiff complained to Rolenc about the decrease in her pay and called him a "prick." (Id. ¶ 18.)[3] Later that day, the plaintiff's husband came to the school and confronted Rolenc about the plaintiff's pay reduction. (Id. ¶ 19.) The plaintiff's husband prevented Rolenc from leaving during the confrontation. (Id. ¶ 20.)

"Rolenc informed Dr. Brian Maher, the Superintendent of Centennial Public Schools at the time, of the incident that occurred between him and [the plaintiff] and her husband on July 14, 2005." (Defs.'s Facts ¶ 21.) There is evidence that Rolenc recommended to Maher that the plaintiff's employment be terminated. (Pl.'s Br., filing 57, at 7 ¶ 25.) On July 18, 2005, the plaintiff and Rolenc met with Maher in his office. (Defs.' Facts ¶ 22.) Maher suspended the plaintiff with pay and informed her that the termination of her employment would be effective August 1, 2005. (Id. ¶ 24.) At the time of the plaintiff's termination, she was 61 years of age and had been earning $11.80 per hour, plus $0.88 per hour in differential pay. (Defs.' Facts ¶¶ 1, 5.) Bill Mogee was then 56 years of age, and he earned $13.10 per hour, plus $0.88 per hour in differential pay. (Id. ¶¶ 8-9.) None of the regular full-time custodians at Centennial was younger than 55, and none of the summertime custodial employees was younger than 40 at the time of the plaintiff's termination. (Defs.'s Reply Br., Am. Statement of Material Facts, filing 59, ¶ 11.)

Centennial hired Robert Endorf to replace the plaintiff. (Defs.'s Reply Br., Am. Statement of Material Facts, filing 59, ¶ 26.) At the time of the plaintiff's termination, Endorf was 60 years old, and he was paid $9.50 per hour. (Id.)

On June 12, 2007, the plaintiff filed a five-count complaint against the defendants. (See generally Compl., filing 1.) Count I alleges that Centennial violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., by "reducing Plaintiff's pay, changing her terms and conditions of employment[,] and . . . terminating" her. (Compl., filing 1, ¶ 16.) Count

---

[3]The parties dispute precisely what was said to Rolenc by the plaintiff. According to Rolenc, the plaintiff called him an "asshole" and a "prick." (Defs.' Index, filing 46, Ex. 2, Rolenc Dep. at 44:1-5.) The plaintiff admits that she asked Rolenc "why he was being such a prick." (Pl.'s Br., filing 57, at 6 ¶ 18.) She denies, however, that she called him an "asshole." (Defs.' Index, filing 46, Ex. 3, Rohren Dep. at 40:16-17. But see id. at 42:8-10 ("Q. Okay. When you were calling Mr. Rolenc an asshole, did you say this to his face? A. Yes, I did.").)

II alleges that Centennial and "Rolenc, in his individual and official capacity, deprived the Plaintiff of Equal Protection of the laws contrary to the Fourteenth Amendment to the United States Constitution by treating [the plaintiff] differently than younger individuals and male individuals." (Id. ¶ 20.) Count III alleges that Centennial retaliated against the plaintiff in violation of the ADEA by "reducing her pay, changing her terms and conditions of employment[,] and [by] terminating" her. (Id. ¶ 22.) Count IV alleges that Centennial violated Title VII by discriminating and retaliating against the plaintiff based on her gender. (See id. ¶ 25.) Count V alleges that "[t]he failure to pay the Plaintiff the same sum of money as male employees is a willful violation of the Equal Pay Act." (Id. ¶ 27.)

On December 10, 2007, the defendants filed a "Motion for Summary Judgment Regarding Defendant Richard Rolenc." (See filing 34.) In this motion, the defendants argued, inter alia, that to the extent that Rolenc has been sued in his individual capacity, he is entitled to qualified immunity on each of the plaintiff's claims. (See filing 36 at 4-5.) I denied this portion of defendants' motion in a memorandum and order dated February 19, 2008, in which I noted that the defendants failed "to present their evidence in accordance with this court's local rules." (Filing 44 at 4.) However, because "[t]he issue of qualified immunity generally ought to be resolved 'at the earliest possible stage of a litigation,'" I granted the defendants "leave to file a motion for summary judgment on the issue of qualified immunity no later than February 27, 2008." (Id. at 4-5 (citation omitted).) On February 27, 2008, the defendants filed their "Motion for Summary Judgment Regarding Qualified Immunity of Defendant Richard Rolenc." (Filing 45.) In addition, on February 29, 2008, the defendants filed a "Motion for Summary Judgment Regarding Plaintiff's Claims." (Filing 48.) My analysis of these motions follows.

## II.   ANALYSIS
### A.   Whether Rolenc Is Entitled to Qualified Immunity

Preliminarily, I note that although the complaint is rather ambiguous on this point, the plaintiff has clarified that Count II represents "the only claim against Rolenc." (See Pl.'s Br., filing 57, at 10.) Therefore, my analysis of the defendants' motion for summary judgment based on Rolenc's alleged qualified immunity will focus on Count II of the plaintiff's complaint.

"Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Brockinton v. City of Sherwood, Arkansas, 503 F.3d 667, 671 (8th Cir. 2007) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "This immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Id. at 671-72 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." Id. at 672 (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). The "initial inquiry is whether the facts as alleged show that the [official's] conduct violated a constitutional right." Id. (quoting Scott v. Harris, 127 S. Ct. 1769, 1774 (2007)). "If the facts do not show a violation, [the court] need not proceed further with the qualified immunity analysis." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

In Count II of the complaint, the plaintiff alleges that Rolenc violated her rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution by "treating her differently than younger individuals and male individuals." (Compl., filing 1, ¶ 20.) The "right to be free from gender discrimination is secured by the equal protection clause," Tipler v. Douglas County, Nebraska, 482 F.3d 1023, 1027 (8th Cir. 2007), and although age is not a suspect classification under the equal protection clause, "age discrimination may provide the basis for an equal protection claim," Stalhut v. City of Lincoln, 145 F. Supp. 2d 1115, 1120 (D. Neb. 2001) (citing cases). The defendants do not dispute the general proposition that a reasonable person would have known that the plaintiff had a clearly established constitutional right to be free of gender and age discrimination. Rather, they argue that the specific facts alleged do not show that Rolenc's conduct violated these constitutional rights. (See Defs.' Br., filing 47, at 6-8.) See also Brockinton, 503 F.3d at 672 (describing the initial inquiry that must be undertaken in a qualified immunity analysis). This argument must be analyzed in light of the general framework that is to be applied to discrimination claims based on the equal protection

5

clause.

"[T]he threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment." Stalhut, 145 F. Supp. 2d at 1121-22 (citing Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000)). Next, it must "be determined whether there is sufficient evidence to show that the [preferential treatment] was made . . . on the basis of age or gender." Id. at 1122. Where, as here, there is no direct evidence of age- or gender-based discrimination, the analysis of this question may proceed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003); Briggs v. Anderson, 796 F.2d 1009, 1021 (8th Cir. 1986) (noting that the "inquiry into intentional discrimination is essentially the same for individual actions brought under" Title VII and § 1983); Craik v. Minnesota State University Bd., 731 F.2d 465, 468 n.5 (8th Cir. 1984) ("The issue of discriminatory intent is common to analyses under the Fourteenth Amendment, § 1983, and Title VII."); Stalhut, 145 F. Supp. 2d at 1122. Under the McDonnell Douglas framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Stalhut, 145 F. Supp. 2d at 1122. Generally, in order to establish a prima face case of discrimination based on age or gender, the plaintiff must show that she "is a member of a protected class and has been treated less favorably than others in circumstances which give rise to an inference of intentional discrimination." Briggs v. Anderson, 796 F.2d 1009, 1021 (8th Cir. 1986) (Title VII). See also, e.g., Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1153 (8th Cir. 2007) (age discrimination). "Different specific prima facie case inquiries have been developed for different aspects of employment, but they all follow this basic pattern." Briggs, 796 F.2d at 1021. In the instant case, the plaintiff states that her equal protection claims are based on three instances of "less favorable" treatment at the hands of Rolenc: 1) her termination; 2) the discontinuation of her differential pay; and 3) the reduction of her "bus hours." (Pl.'s Br., filing 57, at 13.) In addition, she argues that Bill Mogee's higher rate of pay constituted gender-based discrimination against her. (See id. at 17.) To establish a prima facie case of age discrimination in a "termination" case, a plaintiff must show that she was a member of a protected class, that she was qualified for her position, that she was terminated, and that she was replaced by someone

sufficiently younger to permit an inference of age discrimination. Ramlet, 507 F.3d at 1153. To establish a prima facie case of age discrimination based on a reduction in hours or pay, a plaintiff must show that she was a member of a protected class, that she was qualified for her position, that she suffered an adverse employment action, and that similarly situated employees outside of the protected class were treated more favorably. See, e.g., Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007). More precisely, the fourth of these "prima facie" elements turns on whether there is a showing of a "sufficient" age difference between the plaintiff and the similarly situated employee or employees used for purposes of comparison. See, e.g., Stalhut, 145 F. Supp. 2d at 1123-24. Finally, to establish a prima facie case of gender discrimination, the plaintiff must show that she was a member of a protected class, that she was qualified for her job, that she suffered an adverse employment action, and that "there are facts that give rise to an inference of unlawful discrimination." Wells v. SCI Management, L.P., 469 F.3d 697, 700 (8th Cir. 2006). A plaintiff may attempt to satisfy the fourth element by showing that she was "treated differently from similarly situated males." Id. In "termination" cases, a plaintiff may satisfy this element by showing that she was replaced by a male. See, e.g., Johnson v. Baptist Medical Center, 97 F.3d 1070, 1072 (8th Cir. 1996).

"Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination." Id.

As the court noted in Stalhut, under this framework the resolution of "the defense of qualified immunity begins to look like a ruling on the merits." 145 F. Supp. 2d at 1121. Indeed, the analysis of the plaintiff's age- and gender-based equal protection claims against Rolenc overlaps significantly with the analysis of the plaintiff's Title VII and ADEA discrimination claims, which also proceeds under the McDonnell Douglas framework. The parties seem not to be particularly sensitive to this overlap, as their arguments concerning Rolenc's eligibility for qualified immunity are not clearly couched within the framework outlined above. (See Defs.' Br., filing 47, at 6-8; Pl.'s Br., filing 57, at 10-13. But see Defs.' Br., filing 50, at 12-16 (arguing

that summary judgment should be entered on Count II in favor of Centennial under the McDonnell Douglass framework).) Nevertheless, the defendants plainly argue that the facts alleged do not show that Rolenc discriminated against the plaintiff based on her age and her gender. In the interests of clarity and consistency, I shall analyze the parties' arguments using the foregoing framework while also taking into account the points raised by the parties in connection with the plaintiff's Title VII and ADEA claims.[4]

It seems to me that the plaintiff has failed to establish that she suffered unlawful discrimination based upon her age. As noted above, in order to establish a prima facie case of age discrimination in a "termination" case, a plaintiff must show, among other things, that she was replaced by someone sufficiently younger to permit an inference of age discrimination. Ramlet, 507 F.3d at 1153. In this case, it is undisputed that the plaintiff, who was 61 years of age at the time of her termination, was replaced with a 60-year-old man. Under these circumstances, the facts cannot support a reasonable inference that the plaintiff's termination was the result of age discrimination. See, e.g., id. at 1153-54 (holding that a five-year age difference is not sufficient to establish a prima facie case).[5] To establish a prima facie case of age discrimination based on a reduction in hours or pay, the plaintiff must show, among other things, that a similarly situated, but substantially younger, employee received more favorable treatment. The defendants argue that the plaintiff cannot satisfy this element, (see Defs.' Br., filing 50, at 14), adding that "none of the employees at Centennial Public Schools were younger than 55 years of age," (Defs.'s Br., filing 47, at 6). To be more precise, the evidence before me shows that none of the full-time custodians at Centennial was younger than 55, and none of the summertime custodial

---

[4]Although I have reorganized the parties' arguments in order to analyze them efficiently, the defendants will certainly not be granted summary judgment on a claim if the plaintiff has not been given "adequate notice and an opportunity to respond" to the defendants' arguments. E.g., King v. Hardesty, 517 F.3d 1049 (8th Cir. 2008).

[5]I note in passing that the plaintiff argues that this 60-year-old male "was hired after the Plaintiff had filed a discrimination charge." (Pl.'s Br., filing 57, at 16.) She adds that she was "the oldest person working at the time other than a part time person" and that "she only had a year and a half to go before full retirement." (Id.) In light of the undisputed fact that the plaintiff was replaced by a worker of nearly identical age, however, I am not persuaded that these facts are sufficient to raise an inference of unlawful age discrimination.

employees was younger than 40 at the time of the plaintiff's termination. (Defs.'s Reply Br., Am. Statement of Material Facts, filing 59, ¶ 11.) In any event, and although the plaintiff's prima facie burden is minimal, I find that the plaintiff has failed to show that any similarly situated, substantially younger employee received more favorable treatment. I am mindful that the plaintiff claims that she spent the same amount of time driving as another female driver of unspecified age who did not have her "paid hours" reduced. (Pl.'s Br., filing 57, at 4-5 ¶¶ 12-13 (citing Defs.' Index, filing 46, Ex. 3, Rohren Dep. at 18:17-19:1).) She has not shown, however, that this driver was "similarly situated" and substantially younger. Nor has she shown that a similarly situated, substantially younger person received more favorable treatment with respect to eligibility for differential pay. Indeed, there does not seem to be any evidence that could support an inference that the reduction in the plaintiff's driving hours or the elimination of her differential pay stemmed from age discrimination. Because no reasonable inference can be drawn that Rolenc's conduct violated the plaintiff's constitutional right to be free from age discrimination, Rolenc is entitled to qualified immunity on the age discrimination component of Count II.

I turn next to the plaintiff's claim that she was terminated in violation of her right to be free from unconstitutional gender-based discrimination. There appears to be no dispute that the plaintiff can establish a prima facie case, and I note in passing that it is undisputed that the plaintiff was replaced by a male employee. The defendants argue, however, that Rolenc is nevertheless entitled to qualified immunity for two reasons.

First, the defendants argue that because "Rolenc was not responsible for the termination of Plaintiff," he should be granted qualified immunity. (Defs.' Br., filing 47, at 7.) There is evidence, however, that Rolenc recommended to Maher that the plaintiff be terminated. It seems to me, therefore, that there is a genuine issue whether "statements or comments made by [Rolenc] played a role in the ultimate decisionmaking process." Warren v. Prejean, 301 F.3d 893, 902 (8th Cir. 2002). As a result, I am not persuaded that Rolenc is entitled to qualified immunity merely because Maher was ultimately responsible for the plaintiff's termination.

Second, the defendants argue that "Plaintiff's actions toward Defendant Richard Rolenc on July 14, 2005 were the reason and cause of her termination." (Defs.' Br., filing 47, at 7.) The

plaintiff has admitted that when she confronted Rolenc about the elimination of her differential pay, she asked him why he was being a "prick." It is also undisputed that the plaintiff's husband then came to the school, confronted Rolenc, and prevented Rolenc from leaving during the confrontation. I find that the defendants have articulated a legitimate, nondiscriminatory reason for the plaintiff's termination. Therefore, the plaintiff "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that . . . gender . . . was a determinative factor in the adverse employment decision." Britton v. City of Poplar Bluff, Mo., 244 F.3d 994, 997 (8th Cir. 2001). The plaintiff argues:

> Plaintiff is a woman. After her termination, she was replaced by a man. Plaintiff believes her gender played a part. There is a submissible case to go to a jury on this.

(Pl.'s Br., filing 57, at 17.) The mere fact that the plaintiff was replaced by a male, coupled with the plaintiff's personal belief that "gender played a part" in her termination, is not sufficient to satisfy the plaintiff's burden.[6] Because the plaintiff has failed to show that her termination violated her constitutional right to be free from gender discrimination, Rolenc is entitled to qualified immunity on this claim.

The plaintiff also submits that she suffered gender discrimination because she was paid less than Mogee. (See Pl.'s Br., filing 57, at 17.) Although it is undisputed that Mogee did receive a greater wage than the plaintiff, I find that the plaintiff has failed to come forward with facts that give rise to an inference that this pay disparity stemmed from unlawful gender discrimination. On this point, the plaintiff argues that she and Mogee performed "substantially similar jobs" because both were custodians (though Mogee was not as good at custodial work as the plaintiff), both drove buses, and both "scooped snow." (See Pl.'s Br., filing 57, at 19; see also id. at 1-3.) She also suggests that Mogee received greater pay merely because he demanded

---

[6]The plaintiff has argued in response to one of the defendants' statements of fact that "the course of conduct in cutting her hours and decreasing her pay were calculated to get her to quit and to bait her because of her age and her gender." (Pl.'s Br., filing 57, at 7 ¶ 24.) The plaintiff refers me to no evidence in support of this argument, however, and unsupported speculation on the part of plaintiff's counsel is insufficient to raise a genuine issue for trial.

a raise. (See id. at 18.) There is indeed evidence that Mogee told the superintendent that he "needed more money to work . . . at Centennial because he couldn't make a living with that [wage]," (Defs.' Index, filing 46, Ex. 2, Rolenc Dep. at 23:14-16), and that he received a pay increase sometime thereafter. There is no evidence, however, that the plaintiff made a similar demand that was rejected by the superintendent. Moreover, it is undisputed that Mogee performed maintenance work, including appliance repair and maintenance of the heating and cooling system, that the plaintiff did not perform. Under the circumstances, the fact that Mogee received a wage increase that he requested is not probative of gender discrimination, and it is clear that Mogee and the plaintiff were not "similarly situated." Thus, the plaintiff cannot establish a prima facie case of gender discrimination based on the disparity of pay between herself and Mogee, and Rolenc is entitled to qualified immunity on this claim.

      Finally, the plaintiff claims that the discontinuation of her differential pay for supervising the summer crew and the reduction of her "bus hours" amounted to unconstitutional gender-based discrimination. However, the plaintiff has not come forward with facts that give rise to an inference that these actions were manifestations of unlawful gender discrimination. There is no evidence, for example, that the plaintiff was "treated differently than similarly situated males" in terms of her differential pay and her paid driving hours. Wells v. SCI Management, L.P., 469 F.3d 697, 700 (8th Cir. 2006).

      The plaintiff has failed to establish that "the facts as alleged show that [Rolenc's] conduct violated [her] constitutional right[s]" to be free from gender- and age-based discrimination. Brockinton v. City of Sherwood, Arkansas, 503 F.3d 667, 672 (8th Cir. 2007). As a result, Rolenc is entitled to qualified immunity on all of the claims raised in Count II of the plaintiff's complaint.

**B. Whether Centennial Is Entitled to Summary Judgment on the Plaintiff's Remaining Claims**

      The plaintiff maintains that Centennial discriminated against her in violation of the ADEA (Count I); retaliated against her in violation of the ADEA (Count III); discriminated and retaliated against her in violation of Title VII (Count IV); and violated the Equal Pay Act by failing to pay her "the same sum of money" as males (Count V). (See Pl.'s Br., filing 57 at 10-11 ("The [Title] VII claims and ADEA claims, retaliation claims and equal pay act claims are

11

agains[t] the Employer school district.").)  For the following reasons, I find that the defendants are entitled to summary judgment on each of these claims.

1.      Discrimination and Retaliation in Violation of the ADEA

The plaintiff has argued that the defendants discriminated against her on the basis of her age by terminating her, discontinuing her differential pay, and reducing her paid bus driving hours.  As noted above, a plaintiff may establish a claim of age discrimination using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Lee v. Rheem Mfg. Co., 432 F.3d 849, 852-53 (8th Cir. 2005).[7]  I have concluded that the plaintiff is unable to establish a prima facie case of age discrimination under this framework.  (See supra Part II.A.)  For the reasons explained above, I find that Centennial is entitled to summary judgment on Count I of the plaintiff's complaint.

It remains to be determined whether Centennial is also entitled to summary judgment on the plaintiff's claim that Centennial retaliated against her in violation of the ADEA.  In the absence of direct evidence of age-based retaliation, this claim too will be analyzed under the McDonnell Douglas burden-shifting framework.  See, e.g., Stewart v. Independent School Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007).

> Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events."  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a "non retaliatory reason for the adverse employment action."  If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who "is 'then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'"

Id. at 1043 (citations omitted).

Centennial argues, inter alia, that the plaintiff has failed to establish a prima facie case of retaliation because there is no evidence that the plaintiff engaged in a statutorily protected

---

[7]A plaintiff may also "survive" a summary judgment motion by coming forward with "direct evidence of discrimination."  Lee, 432 F.3d at 852-53.  In this case, however, no such evidence is before me.

activity that was causally connected with an adverse employment action.[8] An employee engages in protected activity if she opposes any practice made unlawful by the ADEA. See, e.g., Kempcke v. Monsanto Co., 132 F.3d 442, 445 (8th Cir. 1998). Here, the plaintiff argues that she complained to her supervisor that she received less pay than Mogee, that her paid bus hours were reduced, and that her differential pay was eliminated. (Pl.'s Br., filing 57, at 19-20.) There is no evidence, however, that she complained that these actions were taken against her because of her age. Indeed, in her deposition, the plaintiff testified that she did not make any complaints to Maher, Rolenc, or any other employee at Centennial about age or gender discrimination prior to her termination. (See Defs.' Index, filing 46, Ex. 3, Rohren Dep. at 66:21-67:9, 68:9-22.) Because there is no evidence that the plaintiff made these complaints "to oppose age discrimination, which is the conduct that the ADEA protects," Centennial is entitled to summary judgment on the plaintiff's retaliation claim. Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003).

2. Discrimination and Retaliation in Violation of Title VII

The plaintiff has argued that the defendants discriminated against her on the basis of her gender by terminating her, discontinuing her differential pay, reducing her paid bus driving hours, and paying her less than Mogee. Again, because the plaintiff has not come forward with direct evidence of discrimination, her claim must be analyzed using the McDonnell Douglas burden-shifting framework. See, e.g., Johnson v. AT & T Corp., 422 F.3d 756, 761 (8th Cir. 2005). I have analyzed the plaintiff's gender discrimination claims under this framework, (see supra Part II.A), and for the reasons explained above, I find that Centennial is entitled to summary judgment on these claims.

The plaintiff also alleges that Centennial retaliated against her in violation of Title VII. This claim must be analyzed under the same burden-shifting framework that was used to analyze the plaintiff's claim of retaliation in violation of the ADEA. See, e.g., Stewart v. Independent

---

[8]It is undisputed that the plaintiff filed a charge of discrimination with the NEOC, and the defendants do not argue that the filing of this charge is not a statutorily-protected activity. However, none of the adverse employment actions alleged by the plaintiff occurred after the filing of this charge.

School Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007). As explained above, the plaintiff must show, as a part of her prima facie case of retaliation, that she engaged in statutorily protected activity and that a causal connection exists between that protected activity and the adverse employment actions that she claims to have suffered. In this case, the plaintiff has admitted that she made no complaints to Maher, Rolenc, or any other employee about gender discrimination prior to her termination, (see Defs.' Index, filing 46, Ex. 3, Rohren Dep. at 66:21-67:9, 68:9-22), and she has not claimed that she suffered an adverse employment action after she filed her charge of discrimination with the NEOC. As a result, Centennial is entitled to summary judgment on the plaintiff's Title VII retaliation claim.

3. Equal Pay Act

The plaintiff alleges that Centennial paid Mogee more than the plaintiff for equal work, in violation of the Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d). "To establish liability under the EPA, an employee must prove that her employer discriminated on the basis of sex by paying different wages to men and women who performed equal work." Brown v. Fred's, Inc., 494 F.3d 736, 740 (8th Cir. 2007). "'Equal work' means work 'on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Id. (quoting 29 U.S.C. § 206(d)(1)). "Whether two jobs are substantially equal 'requires a practical judgment on the basis of all the facts and circumstances of a particular case,' including such factors as the level of experience, training, education, ability, effort, and responsibility." Hunt v. Nebraska Public Power Dist., 282 F.3d 1021, 1030 (8th Cir. 2002).

The plaintiff's EPA claim is based on the same facts that underlie her claim that the wage disparity between herself and Mogee violated Title VII, and I find both claims fail for the same reasons. See Simmons v. New Public School Dist. No. Eight, 251 F.3d 1210, 1215 (8th Cir. 2001) ("[W]hen a plaintiff alleges that her employer provides 'unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act.'" (citation omitted)). But see Ottman v. City of Independence, Mo., 341 F.3d 751, 758 (8th Cir. 2003) (citing cases holding that the EPA "does not require proof of discriminatory intent"). It is relevant that the plaintiff and Mogee each performed driving and custodial work, and it is relevant that the plaintiff was regarded as better at custodial work than

14

Mogee. Nevertheless, it is undisputed that Mogee not only performed driving and custodial work, but also regularly performed maintenance and repair tasks for Centennial. Thus, the record clearly establishes that there was a significant difference between the plaintiff's and Mogee's skills, abilities, efforts, and responsibilities. I note in passing that the fact that the plaintiff's and Mogee's employment contracts were substantially identical is not relevant in light of the uncontradicted evidence that Mogee's actual job responsibilities included maintenance and repair tasks that were not performed by the plaintiff. Cf. Hunt, 282 F.3d at 1029 (citing Orahood v. Board of Trustees of University of Arkansas, 645 F.2d 651, 654 (8th Cir. 1981)).

Although "summary judgment should be used sparingly in employment discrimination cases," Chock v. Northwest Airlines, Inc., 113 F.3d 861, 862 (8th Cir. 1997), in this case it is clear that there are no genuine issues as to any material fact and that the defendants are entitled to judgment as a matter of law.

**IT IS ORDERED** that the defendants' motions for summary judgment, filings 45 and 48, are granted.

Dated April 4, 2008.

                              BY THE COURT

                              s/ Warren K. Urbom
                              United States Senior District Judge